UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CARMEN F. SCURRY, <br> and ANDREA N. GARY, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY LIVING <br> SOLUTIONS, INC., <br> and DAWN M. SWINEY, <br><br> Defendants. | CIVIL ACTION <br> FILE NO. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

Plaintiffs CARMEN F. SCURRY and ANDREA N. GARY ("Scurry" and "Gary," respectively, and "Plaintiffs" collectively) and by and through the undersigned counsel of record, hereby file this Complaint for Damages against Defendants COMMUNITY LIVING SOLUTIONS, INC. and DAWN M. SWINEY ("Community Living" and "Swiney," respectively, and "Defendants" collectively), respectfully showing the Court as follows:

1.

This action seeks declaratory relief, liquidated and actual damages for Defendants' failure to pay federally mandated minimum and overtime wages to Plaintiffs in violation of the Fair Labor Standards Act ("FLSA"), as

1

amended, 29 U.S.C. § 216(b); as well as for damages in violation of the FLSA anti-retaliatory provision under Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

## JURISDICTION AND VENUE

2.

Plaintiffs invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b).

3.

Venue in this district and division is proper under 28 U.S.C. § 1391, as Defendants maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct complained of herein occurred in this district and division.

4.

This Court has the authority to grant Plaintiffs declaratory relief under the FLSA pursuant to 28 U.S.C. § 2201, *et seq.*

## PARTIES

5.

Plaintiffs

Plaintiff Scurry is a citizen of the United States entitled to bring actions of this nature and type. Plaintiff is a resident of the State of Georgia and subject to the jurisdiction of this Court.

6.

Plaintiff Scurry was paid at an hourly rate of $10.38 during her employment with Defendants.

7.

Plaintiff Gary is a citizen of the United States entitled to bring actions of this nature and type. Plaintiff is a resident of the State of Georgia and subject to the jurisdiction of this Court.

8.

Plaintiff Gary was paid at an hourly rate of $6.92 during her employment with Defendants in 2014.

9.

At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of FLSA § 3(e), 29 U.S.C. § 203(e). Plaintiffs performed non-exempt work for Defendants within the last three (3) years, and regularly worked in excess of forty (40) hours in a given work-week without proper compensation for hours worked in excess of forty (40).

10.

Plaintiffs did not have independent discretion or decision-making authority as to any business-related decisions; all of Plaintiffs' actions and job duties were undertaken at the explicit direction of their supervisors, or otherwise required approval from the same.

11.

Plaintiffs were not responsible for hiring, firing, or reviewing Defendants' employees.

12.

Plaintiffs did not have the authority to exercise disciplinary measures for any employees.

13.

Plaintiffs exercised minimal independent discretion in the duties and tasks they performed while employed by the Defendants.

14.

Community Living Solutions Inc.

Defendant Community Living maintains its principal place of business at 1973 Manhattan Pkwy, Decatur, GA 30035 and is subject to the jurisdiction of this Court. Defendant Community Living may be served by delivering process to its Registered Agent, Dawn M. Swiney, at its principal place of business.

15.

Defendant Community Living is a domestic for-profit company qualified and licensed to do business in the State of Georgia. At all times relevant to this action, Defendant Community Living has conducted business within this district.

16.

During Plaintiffs' employment with Defendants, Community Living earned more than $500,000 per year in gross sales.

17.

During Plaintiffs' employment with Defendants, Community Living employed approximately ten (10) employees who handled goods, materials, and supplies, which had travelled in interstate commerce.

18.

Included in such goods, materials, and supplies were computers, telephones, office equipment and furniture, as well as numerous other goods, materials, and supplies which had been carried in interstate commerce.

19.

At all times relevant to this action, Defendant Community Living was an enterprise covered by the FLSA, as defined by 29 U.S.C. § 203(r) and (s).

20.

Dawn M. Swiney

At all times relevant to this action, Defendant Swiney was an individual resident of the State of Georgia, who owned and operated Defendant Community Living, and who regularly exercised the authority to: (a) hire and fire employees, (b) determine the work schedules for employees, and (c) control the finances and operations of Defendant Community Living. Defendant Swiney may be served at Defendant Community Living's principal place of business at 1973 Manhattan Pkwy, Decatur, GA 30035.

21.

By virtue of having regularly exercised that authority on behalf of Defendant Community Living, Defendant Swiney is an employer as defined by 29 U.S.C. § 201, *et seq*.

## FLSA VIOLATIONS

22.

At all times relevant to this action, Defendants failed to comply with the FLSA by: (1) failing to pay Plaintiffs proper overtime compensation for overtime hours worked by them, (2) retaliating against Plaintiffs for engaging in a conduct that is statutorily protected under the FLSA, and (3) failing to pay Plaintiff Gary the legally required minimum wage for all hours worked by her.

23.

Specifically, Plaintiffs worked overtime hours for Defendants, but was paid at their regular rates and sometimes even less, as opposed to one-and-one-half of their regular rates, as required by the FLSA.

24.

When Plaintiffs complained to the Defendants about the unpaid overtime, Defendants forcefully reduced their work hours.

25.

In addition, Defendants compensated Plaintiff Gary on a flat-fee basis regardless of the number of hours she worked; thus, she was paid less than the federally required minimum wage.

**STATEMENT OF FACTS**

26.

Plaintiffs are former and current employees of Defendants.

27.

At all times relevant to this action, Plaintiffs worked for Defendants as Direct Support Professionals.

28.

Plaintiffs' sole duties were to assist Defendants' mentally challenged clients with their day-to-day living needs; household duties such as cleaning,

cooking, bathing, picking up medications; as well as logistical duties such as transporting clients to their doctors' appointments.

29.

Each Plaintiff had approximately three (3) to five (5) clients at all relevant times to this action.

30.

Plaintiffs did not have the authority to administer medications or to provide medical care for the clients.

31.

In the event that Plaintiffs' clients suffered a medical emergency, Plaintiffs were not authorized to administer any medical care, and instead, were instructed to call an ambulance.

32.

Due to the nature of the disabilities, most clients require twenty-four (24) hour monitoring. Accordingly, Defendants utilize a three-shift system for their employees to monitor clients: 1) an eight (8) hour weekday shift from 3:00 P.M. to 11 P.M, Monday to Friday, ("Day Shift"), 2) a twelve (12) hour overnight weekday shift from 11:00 P.M. to 11:00 A.M. ("Overnight Shift"), and 3) a forty-eight (48) hour weekend shift from Friday night until Sunday night ("Weekend Shift").

33.

All shifts required Plaintiffs to assist and monitor the clients at their residences.

34.

At the end of each shift, Plaintiffs were required to submit a 'Daily Note' to Defendants that contained detailed recordings of the clients' conditions and activities as well as the hours worked by Plaintiffs.

35.

Plaintiff Carmen F. Scurry

Plaintiff Scurry—a fifty (50) year old African-American female—was hired by Defendants in July 2001 until she resigned in August 2017.

36.

From 2014 to 2017, Plaintiff Scurry was paid at an hourly rate of $10.38 by Defendants.

37.

Plaintiff Scurry worked the Day Shift—Monday to Friday for eight (8) hours a day, totaling forty (40) hours a week.

38.

In addition to her Day Shift, Plaintiff Scurry worked the Overnight Shifts, a twelve (12) hour overnight weekday shift from 11:00 P.M. to 11:00

A.M, as well as the Weekend Shift, a forty-eight (48) hour weekend shift from Friday night until Sunday night ("Weekend Shift").

39.

Therefore, Plaintiff Scurry worked eighty-four (84) to ninety-six (96) hours of overtime per week from 2014 until early 2016 by working all three (3) shifts.

40.

Regardless of the hours Plaintiff Scurry worked on a given week, Defendants paid Plaintiff a flat-fee of $1,200 per month for Weekend Shifts and $1,600 per months for Overnight Shifts.

41.

As a result, Defendants only paid Plaintiff Scurry approximately $700 per week ($2,800 per month) for her eighty-four (84) to ninety-six (96) hours of overtime in a given week.

42.

In early 2016, Plaintiff Scurry complained to Defendants about not being appropriately compensated for her overtime.

43.

Since Plaintiff Scurry's complaint, Defendants prohibited Plaintiff Scurry from working in excess of forty (40) hours per week.

44.

Plaintiff Andrea N. Gary

Plaintiff Gary—a forty-nine (49) year old African-American female—was hired by Defendants in February 2012.

45.

In 2014, Plaintiff Gary worked the Weekend Shift—she worked from Friday night to Sunday night, totaling forty-eight (48) hours a week.

46.

However, Plaintiff Gary was paid at an hourly rate of $6.92 ($1,200 per month) in 2014 by Defendants and was never compensated for her overtime.

47.

From 2015 to June 2016, Plaintiff Gary worked approximately 108 hours a week—approximately sixty-eight (68) hours of overtime—by working the Overnight and Weekend Shifts.

48.

During this time, Plaintiff Gary was compensated on a monthly flat-fee of $2,600 and was never compensated for her overtime.

49.

Since June 2016, Plaintiff Gary began to work the Day Shift —Monday to Friday for eight (8) hours a day, totaling forty (40) hours a week.

50.

However, in addition to her Day Shift, Plaintiff Gary also worked the forty-eight (48) hour Weekend Shift.

51.

As a result, Plaintiff Gary worked approximately eighty-eight (88) hours a week—approximately 48 hours of overtime—and was compensated on a monthly-flat fee of $2,800; she was never compensated for her overtime.

52.

In June 2017, Plaintiff Gary complained to Defendants about not being appropriately compensated for her overtime.

53.

Since Plaintiff Gary's complaint, Defendants prohibited Plaintiff Gary from working in excess of forty (40) hours per week.

**CLAIMS FOR RELIEF**
**COUNT I**
**FLSA VIOLATION OF OVERTIME – 29 U.S.C. § 207(a)**
**(ALL PLAINTIFFS)**

54.

Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully restated herein.

55.

During the relevant time period, Plaintiffs were employees of the Defendants within the meaning of 29 U.S.C. § 203 (e)(1).

56.

During the relevant time period, Plaintiffs regularly worked more than forty (40) hours per workweek. Plaintiffs were entitled to be paid one-and-one-half times their regular rate for reach hour worked in excess of forty (40) hours per work week.

57.

Throughout their employment with Defendants, Plaintiffs were only paid a monthly flat-fee—which is less than one-and-one-half times their regular rate—for the hours they spent after their set work hours of forty (40) hours per week.

58.

Defendants' actions, policies, and/or practices described therefore violate the FLSA, 29 U.S.C. § 207(a).

59.

Under any interpretation of the terms, Defendants' conduct in violation of the FLSA was both willful and in bad faith.

60.

As a result of Defendants' intentional, willful, and unlawful acts in refusing to pay Plaintiffs complete overtime compensation for the overtime hours they worked, Plaintiffs suffered damages in addition to incurring reasonable attorneys' fees and costs.

61.

Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiffs therefore seek to recover unpaid overtime wages, liquidated damages in an amount equal thereto, reasonable attorneys' fees, and the costs of this litigation.

## COUNT II
## FLSA VIOLATION OF ANTI-RETALIATION – 29 U.S.C. § 215(a)(3)
## (ALL PLAINTIFFS)

62.

Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully restated herein.

63.

Because Plaintiffs complained about working overtime without proper compensation and because they reasonably believed that the Defendants were engaged in an unlawful act under the FLSA, Defendants were, or should have been, put on notice that Plaintiffs were asserting the right to proper overtime compensation under the FLSA.

64.

In taking these complaints to Defendants, Plaintiffs engaged in an activity protected under 29 U.S.C. § 215(a)(3).

65.

Plaintiffs suffered an adverse action as a result of their statutorily protected activity by being forced to reduce their work hours to forty (40) per week.

66.

Defendants conduct were willful and in bad faith.

67.

Defendants' actions, policies, and/or practices described herein violate the FLSA's anti-retaliation provision.

68.

Because of Defendants' violation of the FLSA, Plaintiffs suffered economic damages as well as incurring reasonable costs of litigation associated with this matter.

69.

Plaintiffs therefore are entitled to liquidated damages and recovery of the costs of litigation.

## COUNT III
## FLSA VIOLATION OF MINIMUM WAGE – 29 U.S.C. § 206(a)
## (PLAINTIFF GARY)

70.

Plaintiff Gary re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

71.

At all times relevant to this matter, Defendants were subject to the FLSA's requirement for paying minimum wage of $7.25 to Plaintiff Gary for all work hours up to forty (40) worked by her under 29 U.S.C. § 206(a).

72.

Despite this FLSA requirement, Defendants only paid Plaintiff Gary $6.92 per hour in 2014.

73.

Defendants' actions, policies, and/or practices described therefore violate the FLSA, 29 U.S.C. § 206(a), by repeatedly failing to compensate Plaintiff Gary at the required minimum wage rate.

74.

Defendants knew, or showed reckless disregard for the fact that it failed to pay Plaintiff Gary minimum wage compensation in violation of the FLSA.

75.

Defendants' conduct was willful and in bad faith.

76.

As a result of Defendants' intentional, willful, and unlawful acts in refusing to pay Plaintiff Gary the required minimum wage, Plaintiff Gary suffered damages in addition to incurring reasonable attorneys' fees and costs.

77.

Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiff Gary therefore is entitled to payment of minimum wages in an amount to be determined at trial, as well as liquidated damages in an amount equal thereto, reasonable attorneys' fees, and the costs of this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and employees similarly situated who opt in to this action ("Opt-Ins") respectfully requests that this Court:

(1) Grant Plaintiffs a trial by jury as to all triable issues of act;

(2) Grant declaratory judgment that Plaintiffs' right under the FLSA were violated;

(3) Leave to add additional plaintiffs or Opt-Ins by motion, the filing of written consent forms, or any other method approved by the Court;

(4) Award compensatory damages in an amount to be determined by a jury;

(5) Award appropriate back overtime pay, reimbursement for lost salary, unpaid wages, and compensate for other damages in amounts to be shown at trial;

(6) Award prejudgment interest on any award of back pay made by the jury as required by law;

(7) Award liquidated damages equal to any back pay for Defendants' willful violation of the FLSA;

(8) Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

(9) Award Plaintiffs' attorneys' fees, costs, and disbursements; and

(10) Award Plaintiff such further and additional relief as may be just and appropriate.

Respectfully submitted this 10th day of October, 2017.

By: **/s/ Regina S. Molden**
Regina S. Molden
Georgia Bar No. 515454
reginamolden@moldenlaw.com
MOLDEN & ASSOCIATES
Peachtree Center – Harris Tower
233 Peachtree St, NE, Suite 1245
Atlanta, Georgia 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 in the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

By: **/s/ Regina S. Molden**
Regina S. Molden
Georgia Bar No. 515454